UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.

**DECISION AND ORDER**
03-CR-211S

FRANK E. PETERS,

            Defendant.

## I. INTRODUCTION

Presently before this Court is the government's request for entry of a preliminary order of forfeiture in the amount of $28,204,000 against Defendant Frank E. Peters. (Docket No. 285.[1]) The government contends that forfeiture is proper and required as the result of Peters's convictions after trial of conspiracy to commit bank fraud, making a false statement to a bank, wire fraud, and mail fraud. (Docket No. 338.[2]) Peters, who elected to have this Court determine forfeiture, contends that the government failed to provide sufficient notice of its forfeiture demand and has failed to meet its burden of proving, by a preponderance of the evidence, that it is entitled to a forfeiture judgment in any amount. For the reasons explained below, this Court will grant the government's request and enter a preliminary order of forfeiture in the amount of $23,154,259.

---

[1]Docket references are to 03-CR-211S, unless otherwise noted.

[2]The original jury verdict form is filed under seal at Docket No. 274.  A copy of the jury verdict form redacted to remove the jury foreperson's name is filed at Docket No. 338.  Because it is publicly available, this Court will cite to Docket No. 338 for the jury verdict form.

## II. BACKGROUND

On October 22, 2003, a federal grand jury returned an 18-count Indictment against Peters and his co-defendants, Mark Hoffman[3] and Gregory Samer[4], relating to an alleged scheme to defraud Chase Manhattan Bank ("Chase"), a federally-insured financial institution.  (Docket No. 1.)  Peters controlled two corporate entities — World Auto Parts, Inc., and Big Horn Core, Ltd. — that had an asset-based revolving line of credit with Chase.  In short, the government charged that the defendants conspired to defraud Chase by falsely overvaluing assets used to secure and maintain the revolving line of credit.

Along with the thirteen substantive counts, the Indictment included five forfeiture counts, which sought various sum-certain money judgments, along with "any other proceeds generated from the offense[s] of conviction," for each offense of conviction.  (Docket No. 1, Counts 14-18.)  In the event that money judgments were unavailable, the government identified other property that it would seek forfeiture of "up to the value of [the sum-certain amounts]."  (Id.)

On June 26, 2006, the government moved to dismiss counts 2, 3, 4, 5, and 15, of the Indictment, without prejudice, pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure.  (Docket No. 102.)  This Court granted that request on June 30, 2006.  (Docket No. 104.)  Thereafter, on July 26, 2006, the Government obtained a new 5-count Indictment, which essentially re-alleged the previously-dismissed counts against Peters.  (Docket No. 1;06-CR-227S.)  But instead of including a sum-certain money judgment in the

---

[3]The jury acquitted Hoffman of all counts against him.  (Docket No. 338.)

[4]Samer, who testified against Peters and Hoffman at trial, entered a guilty plea to Count One of the 03-CR-211S Indictment on February 4, 2005, and was sentenced to 18 months imprisonment on October 15, 2007.  (Docket Nos. 60, 308.)

new forfeiture count, the government sought "a sum of money to be determined by the Court upon the conviction(s) as aforesaid." (Docket No. 1; 06-CR-227S; Count 5.)  It also requested that in the event a money judgment was unavailable, a forfeiture "of any other property of the defendant up to the value of the amount of money to be determined by the Court after said conviction(s)" be entered.  (Id.)

On July 30, 2007, after a ten week trial, the jury convicted Peters of one count of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 371 and 2; one count of making a false statement to a bank in violation of 18 U.S.C. §§ 1014 and 2; one count of bank fraud in violation of 18 U.S.C. §§ 1344 and 2; two counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2; and one count of mail fraud in violation of 18 U.S.C. §§ 1341 and 2.  (Docket No. 338.)  The jury acquitted Peters of three other counts of making a false statement to a bank in violation of 18 U.S.C. §§ 1014 and 2, and at the conclusion of the government's proof, this Court dismissed a single count of money laundering in violation of 18 U.S.C. §§ 1957 and 2, and three counts of bank fraud in violation of 18 U.S.C. § 1344, pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  (Docket Nos. 254, 255, 270, 338.)

On September 5, 2007, the government filed its request for entry of a preliminary order of forfeiture in the amount of $28,204,000.  (Docket No. 285.)   Initial briefing concluded on March 5, 2008, and this Court took the matter under advisement on March 31, 2008, without oral argument.[5]  Briefing was reopened on June 13, 2008, due to the issuance of a decision by the United States Supreme Court.  Supplemental briefing

---

[5] Initial briefing consisted of Docket Nos. 285, 317, 322, 326, and 329.

concluded on June 27, 2008.[6]


# III. DISCUSSION

## A.     Legal Standards Governing Criminal Forfeiture

Criminal forfeiture, as an aspect of sentencing, is distinct from the determination of criminal guilt, and for that reason, proof beyond a reasonable doubt is not required, nor is there a constitutional right to have forfeiture determined by a jury.  See Libretti v. United States, 516 U.S. 29, 49, 116 S.Ct. 356, 367-68, 133 L.Ed.2d 271, 289 (1995).  Rather, after a defendant is convicted, the government must establish that the property at issue is subject to criminal forfeiture only by a preponderance of the evidence.  See United States v. Capoccia, 503 F.3d 103, 116 (2d Cir. 2007) ("Sentencing courts determine forfeiture amounts by a preponderance of the evidence.") (citing United States v. Fruchter, 411 F.3d 377, 383 (2d Cir. 2005)).

The court is tasked with determining "what property is subject to forfeiture under the applicable statute" based on the evidence of record, including trial evidence, and evidence developed at a forfeiture hearing, if any.  FED. R. CRIM. P. 32.2(b)(1); Capoccia, 503 F.3d at 109-110; United States v. Gaskin, No. 00-CR-6148, 2002 WL 459005, at *9 (W.D.N.Y. Jan. 8, 2002).  For the forfeiture of specific property, "the court must determine whether the government has established the requisite nexus between the property and the offense."[7]

---

[6]Supplemental briefing consisted of Docket Nos. 336 and 337.

[7]By rule, a defendant may choose to have this determination made by the jury.  See FED. R. CRIM. P. 32.2(b)(4) ("Upon a party's request in a case in which a jury returns a verdict of guilty, the jury must determine whether the government has established the requisite nexus between the property and the offense committed by the defendant.").  Peters, however, elected to have this Court make this determination.  (Docket No. 269.)

FED. R. CRIM. P. 32.2(b)(1).  For imposition of a personal money judgment, "the court must determine the amount of money that the defendant will be ordered to pay."  Id.

Here, the government must satisfy the requirements of the criminal forfeiture provisions in 18 U.S.C. § 982(a)(2), which are as follows:

> The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate –
>
> (A) section 215, 656, 657, 1005, 1006, 1007, 1014, 1341, 1343, or 1344 of this title, affecting a financial institution, [ ]
>
> . . .
>
> shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

Section 982(b)(1) incorporates by reference 21 U.S.C. § 853, which also provides for forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation."  21 U.S.C. § 853(a)(1).  It further requires that the court order forfeiture of "all property described in this subsection" when imposing sentence.  21 U.S.C. § 853(a).  The forfeiture provisions in § 853 must be liberally construed to effectuate their remedial purposes.  See 21 U.S.C. § 853(o).

If the court finds that property is subject to forfeiture, it must enter a preliminary order of forfeiture setting forth the amount of any money judgment or directing the forfeiture of specific property without regard to any third party interests, which are determined in an ancillary proceeding under Rule 32.2(c).  FED. R. CRIM. P. 32.2(b)(2).

Finally, no order of forfeiture may issue without proper notice to the defendant.  See FED. R. CRIM. P. 7(c)(2) and 32.2(a).

**B.      The Parties' Forfeiture Submissions**

In accordance with the forfeiture statutes identified above and based upon the trial evidence and additional evidence submitted in these forfeiture proceedings, the government requests entry of a preliminary order of forfeiture against Peters, as a result of his offenses of conviction, in the form of a personal money judgment for $28,204,000, along with the forfeiture of any substitute assets necessary to satisfy the personal money judgment.

Peters opposes the government's request, arguing essentially that (1) he received inadequate notice of the government's forfeiture demand because the government represented pre-trial that $1,596,000 was the "best case" forfeiture recovery, and (2) he did not "obtain" criminal proceeds as required by the forfeiture statutes.

These arguments are addressed below.


**C.      Legal Issues**

**1.      The Government Provided Adequate Notice of Forfeiture**

Peters argues that the government's forfeiture request should be limited to $1,506,000 because that is the figure it identified in pre-trial proceedings as being its "best case" forfeiture recovery.  He contends that the government's forfeiture request violates Rule 32.2(a) because the government never notified him or the Court that it would seek forfeiture in a greater amount.  The government argues that Peters had sufficient notice of his forfeiture exposure and that its request for forfeiture of substitute assets "up to the value of" the requested money judgments does not limit its overriding forfeiture request.

Two rules of federal criminal procedure require that a defendant receive notice of the government's intention to pursue criminal forfeiture.  Rule 7(c)(2) precludes entry of a judgment of forfeiture if the charging indictment or information fails to notify the defendant that he has an interest in property that is subject to forfeiture.  Similarly, Rule 32.2(a), which was derived from Rule 7(c)(2), bars a court from entering a judgment of forfeiture "unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute."  The Advisory Committee Notes explain that

> [a]s courts have held, subdivision (a) is not intended to require that an itemized list of the property to be forfeited appear in the indictment or information itself.  The subdivision reflects the trend in caselaw interpreting present Rule 7(c).  Under the most recent cases, Rule 7(c) sets forth a requirement that the government give the defendant notice that it will be seeking forfeiture in accordance with the applicable statute.  It does not require a substantive allegation in which the property subject to forfeiture, or the defendant's interest in the property, must be described in detail.

FED. R. CRIM. P. 32.2(a), Advisory Committee Notes, 2000.  Indictments containing no more than a tracking of language in the applicable forfeiture statutes are therefore sufficient. See United States v. Grammatikos, 633 F.2d 1013, 1023-24 (2d Cir. 1980); United States v. Galestro, No. 06-CR-285, 2008 WL 2783360, at *9-*10 (E.D.N.Y. July 15, 2008); United States v. Brown, No. 04-CR-159, 2006 WL 898043, at *6 (E.D.N.Y. Apr. 4, 2006).

The relevant forfeiture allegations here are those found in the two indictments that were combined for trial (03-CR-211 and 06-CR-227).  In 03-CR-211, Counts 14 and 18 notify Peters that the government would seek forfeiture of "any property constituting, or derived from, proceeds the defendants obtained directly or indirectly," as the result of a

conviction on the conspiracy charge (Count 1) or the mail and wire fraud charges (Counts 11, 12, 13).  Those counts further identify the property subject to forfeiture as "including but not limited to," specified money judgments and "any other proceeds generated from the offense[s] of conviction," along with any substitute assets "up to the value of" the requested money judgments.

In 06-CR-227, Count 5 notified Peters that the government would seek forfeiture of "any property constituting, or derived from, any proceeds obtained, directly or indirectly," as the result of a conviction on any of the false statement to a bank charges (Counts 1-4). Count 5 further identifies property subject to forfeiture as "including but not limited to . . . [a] sum of money to be determined by the Court upon the conviction(s) aforesaid," along with any substitute assets "up to the value of" the sum of money determined by the Court.

The question is whether these forfeiture counts sufficiently notify Peters that his criminal forfeiture exposure could include the government's current request for $28,204,000.  Peters maintains that they do not for two reasons.  First, he argues that a proper reading of the forfeiture counts in 03-CR-211 reveals that the government has limited its own forfeiture recovery by seeking substitute assets "up to the value of" the identified money judgments, which do not exceed $1,596,000.  Second, he argues that the government is bound by its pre-trial representations that the maximum amount subject to forfeiture was $1,596,000.  For example, during pre-trial lis pendens proceedings, the government represented to Peters and the Magistrate Judge on more than one occasion that $1,596,000 was the maximum forfeiture recovery, assuming that the government prevailed on all counts.  (See, e.g., Docket Nos. 21, 295.)

As to Peters's first argument, this Court disagrees with his construction of the

8

forfeiture language used in the indictment.   Counts 5, 14, and 18 identify the forfeiture sought as "any property constituting, or derived from, proceeds the defendants obtained directly or indirectly, as the result of such violation."   This language tracks the two applicable forfeiture statutes, and put Peters on notice that the government would seek forfeiture of any property he obtained as a result of proven criminal conduct, which the government now contends is $28,204,000.   See 18 U.S.C. § 982(a) (requiring that a defendant convicted of an included offense forfeit "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation"); 18 U.S.C. § 853(a)(1) (same).   This is adequate notice, as a tracking of the relevant forfeiture statutes is all that Rule 32.2(a) requires. See Grammatikos, 633 F.2d at 1023-24; Galestro, 2008 WL 2783360, at *9-*10; Brown, 2006 WL 898043, at *6.

Along with this overriding forfeiture request, the indictment advises Peters that the property subject to forfeiture "*include[s] but [is] not limited to*" the money judgments and substitute assets later identified.   Thus, even before reaching the allegedly limiting language identified by Peters, the indictment identifies the money judgments and substitute assets as just portions of what the government may seek by way of criminal forfeiture. That is, Peters's criminal forfeiture exposure includes, but is not limited to, the requested money judgments and substitute assets.   He remains on notice, however, that his full criminal forfeiture exposure includes "any property constituting, or derived from, proceeds the defendants obtained directly or indirectly," from the offenses of conviction.

This Court is not convinced that the language Peters relies on — that the forfeiture of substitute assets includes property "up to the value of . . . $1,596,000" — limits the government's overriding forfeiture request.  For that to be the case, the "up to the value of"

language would have to modify the government's overriding forfeiture request for "any property constituting, or derived from, proceeds the defendants obtained directly or indirectly," which it clearly does not. Rather, it modifies only a portion of the government's forfeiture request — the "included, but not limited to" assets — and therefore does not negate the overriding notice included in the indictment. See United States v. Rupley, 706 F.Supp. 751, 753 (D.Nev. 1989) (rejecting the argument that "includes but is not limited to" restricts the government's forfeiture request, noting "[t]he Government should not be foreclosed from seeking forfeiture of all property subject to the penalty, simply because it listed some items with particularity").

This Court is similarly unpersuaded by Peters's second argument, which is that the government is bound by its pre-trial representations that the maximum amount subject to forfeiture is $1,596,000. Peters cites United States v. Pantelidis for the proposition that if the government commits itself to a particular forfeiture amount, it is bound by that amount. No. Crim. 01-0694, 2005 WL 1320135 (E.D. Pa. June 1, 2005). But Pantelidis is not instructive because it does not involve the government committing to a particular forfeiture amount outside of the allegations in the indictment, which is the allegation here. In essence, Peters is arguing that the government's early pre-trial representations regarding the maximum forfeiture amount — which arose in lis pendens proceedings concerning the extent of pre-trial restraint to be placed on Peters's property — supplant the forfeiture allegations in the indictments. Pantelidis does not so hold, and the law is clear that the notice requirement in Rule 32.2(a) pertains only to the indictment or information. Thus, this Court concludes that the government's verbal assessment of what it expected to recover by way of forfeiture does not nullify, modify, or limit the notice contained in the indictments,

10

which put Peters on notice of his full forfeiture exposure.

Accordingly, this Court finds that the indictments comply with Rule 32.2(a) and put Peters on sufficient notice of the full interest and property subject to forfeiture, including the government's current request.  Grammatikos, 633 F.2d at 1024 (holding that the only notice required is of "the extent of the interest or property subject to forfeiture"); see also United States v. Dolney, No. 04-CR-159, 2005 WL 1076269, at *9 (E.D.N.Y. May 3, 2005) (". . . the government is not required to provide calculations or estimates of loss; it is sufficient that the government has indicated that it would seek 'any' proceeds derived from the offenses").   Consequently, the government's forfeiture request is not limited to $1,596,000.


### 2.    The Government's Forfeiture Request is Cognizable under 18 U.S.C. § 982(a)(2)

Section 982(a)(2) of Title 18 of the United States Code requires forfeiture of "any property constituting, or derived from, proceeds the person obtained directly or indirectly" as the result of certain criminal conduct.  18 U.S.C. § 982(a)(2).  Given Peters's high-level position within corporate entities World Auto Parts and Big Horn Core, the question is whether Peters, as "the person" referenced in the statute, obtained directly or indirectly, any proceeds from the conduct for which he was convicted.

The government argues that the corporate form does not insulate Peters from forfeiture liability, and therefore this Court should find that he did in fact directly or indirectly obtain proceeds, including all disbursements under the revolving line of credit between Chase and World Auto Parts and Big Horn Core, from July 1998 through October 2000.

11

The government maintains that the corporate form may be disregarded in forfeiture proceedings when it is used to facilitate an individual's criminal activity. As support, it relies on several cases arising in the RICO context. See United States v. Simmons, 154 F.3d 765 (8th Cir. 1998) (corporate form ignored where defendant received bribe through non-defendant corporation); United States v. BCI Holdings (Luxembourg) S.A., 795 F.Supp. 477, 479 (D.D.C. 1992) (assets of defendant's alter ego corporation found subject to forfeiture); United States v. Segal, 339 F.Supp.2d 1039, 1050 n. 14 (N.D.Ill. 2004) (corporate veil may be pierced for forfeiture purposes if justified by defendant's conduct).

Peters maintains that proceeds obtained by or for World Auto Parts, Big Horn Core, or other corporate entities, cannot be attributed to him, and therefore, he did not personally "obtain" proceeds under the statute from the conduct for which he was convicted. Peters argues that the government's cases are distinguishable because they arise under the broader RICO forfeiture statute. See 18 U.S.C. § 1963.

This Court finds that, though not controlling, the government's cases are nonetheless instructive because they are examples of the corporate form being set aside to effectuate the remedial purpose of a forfeiture statute, albeit in a different context. The RICO forfeiture statute requires forfeiture of proceeds obtained by "the person," just as § 982(a)(2) does. Compare 18 U.S.C. § 1963(a)(3) with 18 U.S.C. § 982(a)(2). And although the RICO statutes are deliberately broad, see Russello v. United States, 464 U.S. 16, 21-22, 104 S.Ct. 296, 299-300, 78 L.Ed.2d 17 (1983), § 982(a)(2) is due similar liberal construction to effectuate its remedial purpose. See 18 U.S.C. § 982(b)(1) (incorporating 21 U.S.C. § 853(o)). Moreover, § 982(a)(2) authorizes forfeiture of not only proceeds obtained directly, but also of proceeds obtained *indirectly*. See 18 U.S.C. § 982(a)(2).

Peters argues that the statute requires that one *personally* obtain proceeds. This suggests that proceeds must be obtained directly by "the person."  But the statute also expressly authorizes forfeiture of property "the person obtained . . . indirectly."  18 U.S.C. § 982(a)(2).  Assuming the government can prove that World Auto Parts and Big Horn Core were Peters's alter egos, its forfeiture theory falls squarely within the plain language of the statute.  Peters is no less "the person" who obtained proceeds if he did so by use of a corporate alter ego; an alter ego finding pierces the corporate veil, and places the defendant in the same position as if he had obtained the proceeds himself.  Nothing presented to this Court suggests that a person who obtains proceeds through a corporate alter ego is any less liable for forfeiture than a person who obtains proceeds in another way.  In both cases, "the person" obtains proceeds.

Accordingly, this Court finds that the government's request that Peters be held personally responsible for the forfeiture of funds he obtained through World Auto Parts and Big Horn Core is legally cognizable under § 982(a)(2).  To succeed on this theory, the government must prove that World Auto Parts and Big Horn Core were Peters's alter egos, such that Peters "obtained" proceeds through those entities.

**D.     World Auto Parts and Big Horn Core Were Peters's Alter Egos**

The United States Supreme Court has "long recognized 'the broader equitable principle that the doctrine of corporate entity, recognized generally and for most purposes, will not be regarded when to do so would work fraud or injustice.'" First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 629, 103 S.Ct. 2591, 2601, 77

L.Ed.2d 46 (1983) (quoting Taylor v. Standard Gas Co., 306 U.S. 307, 322, 59 S.Ct. 543, 550, 83 L.Ed. 669 (1939)).  Most applicable here is the "complete domination" theory of alter ego liability, determined by (1) whether the individual exercised such complete control that the corporation had no separate will of its own; and (2) whether this control was used to commit a wrong.[8]  See Marketplace LaGuardia L.P. v. Harkey Enters., Inc., No. 07-CV-1003, 2008 WL 905188, at *2 (E.D.N.Y. Mar. 31, 2008); JSC Foreign Economic Assoc. Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 386 F.Supp.2d 461, 464 (S.D.N.Y. 2005; Shamis v. Ambassador Factors Corp., 34 F.Supp.2d 879, 899 (S.D.N.Y. 1999). Control over the entirety of the corporation's business need not be proven, rather, domination over the transaction attacked his sufficient.  See MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001); Marketplace LaGuardia, 2008 WL 905188, at *3 (citing Thrift Drug, Inc. v. Universal Prescription Adm'rs., 131 F.3d 95, 97 (2d Cir. 1997))

Based on all the evidence of record, this Court finds that Frank Peters dominated and controlled World Auto Parts and Big Horn Core such that they were his alter egos for purposes of piercing the corporate veil and imposing criminal forfeiture liability.  Peters and his wife, Marta Chaikovska, purchased World Auto Parts from Fred Labenski in 1990, after Peters identified it as a promising business opportunity.  (Peters Tr.I, p. 4, 11-16.[9])  The

---

[8] Because the circumstances presented here do not involve allegations that one corporate entity is the alter ego of another, the multi-factored test used to determine corporate domination is inapplicable. See, e.g. MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (setting forth 10-factor test) (citing Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. 1997); see also Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 139 (2d Cir. 1991).

[9] Referring to the July 10, 2007 trial testimony of Defendant Frank Peters.  (Docket No. 347.)

ownership structure, which was based on capital contributions, consisted of Chaikovska with 85% ownership, Peters with 13%, and two other partners, one of whom was Peters's sister-in-law, with 1% each.  (Peters Tr. I, pp. 17-18.)

Peters highlights the fact that he had only a 13% stake and argues that this undercuts the government's alter ego theory.  This Court disagrees.  Although Peters owned only 13%, his wife and sister-in-law owned another 86%, leaving just 1% owned by someone outside of Peters's family.  While Chaikovska was involved in some upper-level management meetings, she did not appear to act independently of Peters, and no one in the ownership group other than Peters controlled the corporations on a day-to-day basis. Thus, though he was not a majority owner, this Court finds that Peters was in *de facto* control of World Auto Parts and Big Horn Core.

For example, Peters hired new employees and restructured the company.  (Peters Tr. I, pp. 17-19.)  He specifically molded World Auto Parts to be used as a "roll-up" model for his plan to enter and dominate other markets.  (Peters Tr. I, pp. 23-28.)   In furtherance of Peters's plan, the World Auto Parts ownership group purchased Big Horn Core in 1995 or 1996, which was a similar business in Dallas, with Peters and Chaikovska again making a major capital investment.  (Peters Tr. I, pp. 23, 26-28, 30.)

Peters was President of World Auto Parts.  (Samer Tr.I, p. 10, 25.[10])  Along with a salary that grew from between $100,000 and $120,000 in 1990, to between $285,000 and $287,000 in 2000, World Auto Parts paid for Peters's two vehicles in Palm Desert, CA, which were not used for corporate business.  (Samer Tr.I, pp. 25-26; Peters Tr.II, p. 25-

---

[10]Referring to the May 24, 2007 trial testimony of Gregory T. Samer.  (Docket No. 348.)

26.[11])

Peters directed product managers at both World Auto Parts and Big Horn Core on all aspects of business, including inventory liquidation, collection of accounts receivable, prebilling, development of sales plans, inventory sediment, development of cash flow models, and timing of invoices.  (Peters Tr. I, pp. 48, 49-50, 59, 61, 62-64, 65, 67, 73, 74, 101, 110.)  Peters moved money in and out of World Auto Parts and Big Horn Core, and had the ability to direct wire transfers from the corporate accounts.  (Peters Tr. I, pp. 18, 26, 70, 74-78; 81. 82, 85-86, 98-99; Samer Tr.II, pp. 100-102; 107.)  Peters also owned or had interests in the companies that owned the buildings where World Auto Parts and Big Horn Core were housed, as well as other corporate entities that had business relationships with World Auto Parts and Big Horn Core.  (Peters Tr. II, pp. 128, 172; Peters Tr. I, pp. 68, 132.)

Gregory T. Samer, who was the controller of World Auto Parts, testified that Frank Peters controlled World Auto Parts and Big Horn Core and was "very involved" in the day-to-day running of the business.[12]  (Samer Tr.I, p. 10, 11, 50.)  Peters traveled to Buffalo approximately 15 times a year to work at World Auto Parts and stayed approximately three to five days each time.  (Samer Tr.I, pp. 44, 46.)  Peters attended meetings with World Auto Parts staff and met with Samer to discuss general business issues.  (Samer Tr.I, pp. 46-49.)  When Peters was not in Buffalo, Samer spoke to him almost daily, or at least four

---

[11] Referring to the July 11, 2007 trial testimony of Defendant Frank Peters.  (Docket No. 346.)

[12] Peters maintains that he was not running World Auto Parts while acquiring product in Mississippi and Arizona during the summers of 1998 and 1999, or when he was injured in a car accident in Fall of 1999.  The trial testimony, however, demonstrated that Peters controlled World Auto Parts whether he was in Buffalo or not.  See, e.g., Samer Tr.I, pp. 46-49; Samer Tr.II, pp. 24-25, 124-125.

times per week.  (Samer Tr.I, p. 48.)  Samer testified that he received instructions from Peters and was expected to follow those instructions.  (Samer Tr.II, pp. 124-125.)

Peters also directed the corporate accounting and billing methods.  He knew about, approved, and directed the practices of "holding months open," "prebilling," "rebilling," and the use of false invoices, which essentially constituted the fraud against Chase.  (Samer Tr.II, pp. 13-16; 17-20; 21-22; 31; 85-86; 104-107; 112.[13])  Samer testified that he never recorded a purchase order as a "prebill" without Peters's approval.  (Samer Tr.II, pp. 24-25.)

Peters was also involved in renewing the revolving asset line of credit with Chase in June 1998.  (Peters Tr. I, pp. 80-81.)  Although Chaikovska signed the loan agreement in her corporate capacity, Peters reviewed the agreement and Chaikovska signed only after consultation with Peters. (Peters Tr. II, pp. 84, 87, 89.)  Renewal of the revolving line of credit was necessary to keep Peters's corporations in business.  (Peters Tr. II, p. 89.)

The sum and substance of the evidence presented over the ten week trial is that Peters was in complete control of World Auto Parts and Big Horn Core, as well as several other entities associated with them.  He had full access to the revolving line of credit with Chase, which he could access at will through Samer and other individuals in his employ. Peters directed the daily operations and business practices of both entities, and he was instrumental in securing and renewing the line of credit from Chase.  This Court is convinced that Peters completely dominated World Auto Parts and Big Horn Core such that they were his alter egos.  The corporations operated under his direction and control,

---

[13]Referring to the May 25, 2007 trial testimony of Gregory T. Samer.  (Docket No. 349.)

and all significant tasks were completed according to his instructions.  And by the jury's verdict, it has been determined that Peters used his influence and control to conspire to defraud Chase and commit other crimes.

Accordingly, this Court finds that the evidence and facts and circumstances of this case warrant a finding that the corporate veil should be pierced and Peters should be held accountable for criminal forfeiture of proceeds obtained through World Auto Parts and Big Horn Core, pursuant to 18 U.S.C. § 982(a)(2).  Cf. FDIC v. Finkielstain, No. 91 CIV. 8020, 1993 WL 337884, at *3 (S.D.N.Y. Sept. 2, 1993)(finding in the civil bank fraud context that a defendant who uses a corporation to perpetrate a fraud is not entitled to shield himself from liability with it).

### E.    Peter's Obtained Proceeds Subject to Forfeiture Through World Auto Parts and Big Horn Core

The government contends that Peters obtained $28,204,000 in proceeds from his crimes of conviction.  It divides its evidence into four lettered schedules.[14]

### 1.    Schedules A and C

Schedule A relates to Count 1 and includes evidence of all disbursements under the revolving line of credit between World Auto Parts/Big Horn Core and Chase, between June 1998 and October 2000, totaling $22,835,154.  Schedule C relates to Counts 1, 5, and 6, and contains evidence of all disbursements under the line of credit from February 2000

---

[14] The government's schedules contain citations to the record evidence supporting each aspect of its forfeiture request.  (Docket No. 285.)  The government also provided this Court and Peters's counsel with binders containing its supporting exhibits.  Further support is found in the proffers provided by FBI Special Agent James F. Lafferty, II, and Marjorie Abrams.  (Docket No. 326.)

through October 2000, totaling $3,634,399.

The nexus between these disbursements and Peters's crimes of conviction is straightforward: renewal of the line of credit in 1998 was based on false statements and other accounting improprieties that were part and parcel of the conspiracy to defraud Chase by overvaluing the inventory collateral.  According to Chase representative John Hariaczyi, had Chase been aware of the false representations, it would not have renewed the revolving line of credit agreement, nor certainly, increased it to $10,500,000.

Peters does not contest the evidentiary basis for the government's forfeiture claim. That is, he does not dispute that the disbursements were made as alleged by the government.  Rather, he argues that (1) all disbursements from the line of credit were made to World Auto Parts and Big Horn Core, and therefore he did not obtain them; (2) disbursements from the line of credit were not passed through to Peters or used for an illicit purpose, but rather, were used for legitimate business expenses; (3) disbursements made in 1998 and 1999 should be excluded from forfeiture because Peters was acquitted of several substantive counts, including Counts 2, 3, and 4; (4) the indictment charged three conspiracies, and his acquittal on Counts 2, 3, and 4 equate to a finding by the jury that he did not engage in the conspiracy after January 2000; and (5) "proceeds" under § 982(a)(2) must be interpreted as "profits" pursuant to a recent decision by the United States Supreme Court, and no profits were ever realized.

This Court has already determined that Peters obtained proceeds within the meaning of § 982(a)(2) through World Auto Parts and Big Horn Core, thereby foreclosing his first argument.  Peters's second argument is unpersuasive because subsequent, legitimate use of property or proceeds illegally obtained is not relevant to whether forfeiture

is required.  See United States v. Huber, 243 F.Supp.2d 996, 1003 (D.N.D. 2003) (holding that once proceeds are illegally obtained, original illegality is not cured by subsequent, legitimate use of the illegally obtained proceeds).  Peters's third argument is unavailing because he was convicted of conspiracy in Count 1, the overt acts of which include the substantive counts on which he was acquitted.  Those proceeds are therefore subject to forfeiture.  See United States v. Capoccia, 503 F.3d 103, 117, 118 (2d Cir. 2007) (entire breadth of conspiracy considered for purposes of determining forfeiture).  Peters's fourth argument — that the indictment charges three conspiracies and his acquittal on Counts 2, 3, and 4, amount to a finding that he did not participate in the conspiracy after January 2000 — has already been rejected by this Court, as it was the basis of Peters's Rule 34 Motion to Arrest Judgment.  (See Docket No. 319.)  Acquittal on Counts 2, 3, and 4 does not limit the scope of the conspiracy or the proceeds subject to forfeiture.

Peters's final argument rests on the United States Supreme Court's recent plurality decision in United States v. Santos, where it considered whether the term "proceeds" in the federal money laundering statute, 18 U.S.C. § 1956(a)(1), means "receipts" or "profits." __ U.S. __, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008).  A plurality of four justices determined that "proceeds" always means "profits."  See id. at 2025.  Justice Stevens concurred with this plurality to form a majority, but he determined that "proceeds" means "profits" when the transactions involved "revenue generated by a gambling business that is used to pay the essential expenses of operating that business."  Id. at 2033 (Stevens, J., concurring).

Given the nature of the Court's decision, Santos is not instructive here.  It must be read as limited to its facts, standing only for the proposition that "proceeds" means "profits" in the narrow circumstances identified by Justice Stevens.  See, e.g., Gotti v. United

States, No. 08-CV-2664, 2009 WL 197132, at *2 (E.D.N.Y. Jan. 28, 2009) (". . . Santos is limited to its facts; it stands only for the proposition that the money laundering statute does not make criminal the use of the revenue from an illegal gambling operation to pay for the expenses involved in running the operation."); Bull v. United States, Nos. CV08-4191, CR 04-402, 2008 WL 5103227, at *8 (C.D.Cal. Dec. 3, 2008) (given the nature of the Santos opinion, it does not announce a new rule that "proceeds" means "profits" in all statutes). Thus, because this case does not involve the money laundering statute, Santos does not apply.

Consequently, this Court finds that, as proceeds obtained by Peters as a result of his crimes of convictions, the draws from the revolving line of credit between July 1998 and October 2000 totaling $22,835,154 (Schedules A and C[15]) are forfeited pursuant to § 982(a)(2).


### 2.    Schedule B

Schedule B contains evidence relating to payments made from World Auto Parts/Big Horn Core to Frank Peters or his affiliated companies, including salary, rent, car leases, and other perquisites of Peters's employment as President between 1996 and October 2000, totaling $5,050,000.  The government concedes that post-1998 payments made to Peters (approximately $2,329,205) have already been included in the forfeiture amount for Schedule A because they came from the revolving line of credit.  Consequently, at issue is approximately $2,621,513 in pre-1998 payments to Peters for salary, interest income,

---

[15]The amounts in Schedule C are duplicative of portions of Schedule A.  To avoid double counting, the Schedule C amount has not been added to the Schedule A amount.

rental income, and tax distributions.

Peters argues that the government has failed to connect the pre-1998 payments to any offenses for which he was convicted.  This Court agrees.  Aside from a reference to Samer testifying that "holding the month open" and prebilling began as early as 1996 (see Samer Tr.II, pp. 17-18, 24, 26), the government has not set forth persuasive proof that pre-1998 payments are subject to forfeiture. The government's forfeiture request centers on transactions beginning in 1998.  For example, it does not seek forfeiture of advances from the revolving line of credit with Chase in place between 1996 and 1998.  Accordingly, the Schedule B payments will not be included in the preliminary order of forfeiture.


  **3.**  **Schedule D**

Schedule D relates to Peters's convictions on Counts 7, 8 and 9, and contains evidence of funds due or payable to World Auto Parts that Peters diverted to ITEC during 2000, totaling $319,105.[16]  ITEC is a company Peters formed in February 2000.  (Peters Tr.I, p. 132.)  Peters controlled ITEC just as he did World Auto Parts and Big Horn Core, and used it to divert funds payable to World Auto Parts so that those funds could not be "swept" by Chase as payment on the revolving line of credit. Again, Peters does not contest the evidentiary basis for the government's Schedule D request, but rather, argues that he never personally obtained these funds.  Peters did obtain them, however, by diverting them to ITEC, a company totally under his control.  Consequently, this Court finds that, as proceeds Peters obtained as a result of his crimes of conviction, the Schedule D

---

[16]The amount pertaining to Count 7 is $269,655, to Count 8 is $27,650, and to Count 9 is $21,800.

amounts, totaling $319,105, are forfeited pursuant to § 982(a)(2).

## F.    The Forfeiture Is Not an Excessive Fine under the Eighth Amendment

This Court recognizes that the forfeiture here is significant.  This is principally because the repeated draws on the line of credit are not offset by payments to the line of credit for purposes of forfeiture.  See United States v. Boulware, 384 F.3d 794 (9th Cir. 2004); United States v. Rudaj, No. 04 CR 1110, 2006 WL 1876664, at *4 (S.D.N.Y. July 5, 2006) (citing Boulware).  Accordingly, although not raised by either party, this Court will assess the forfeiture under the Eighth Amendment.

Punitive criminal forfeiture is subject to proportionality review under the Excessive Fines Clause of the Eighth Amendment.  See United States v. Bajakajian, 524 U.S. 321, 333-34, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998).  "The amount of the forfeiture must bear some relationship to the gravity of the offence that it is designed to punish."  Id. at 334. Forfeiture is unconstitutionally excessive if "it is grossly disproportional to the gravity of a defendant's offense."  Id. at 334; see also United States v. Varrone, 554 F.3d 327, 331 (2d Cir. 2009).

The United States Supreme Court has instructed district courts (and circuit courts) to "compare the amount of the forfeiture to the gravity of the defendant's offense.  If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional."  Bajakajian, 524 U.S. at 336-37.  Four factors inform this determination: (1) the "essence" of the crime and its relation to other criminal activity; (2) whether the defendant fits into the class of persons for whom the statute was principally

designed; (3) the maximum sentence and fine that could be imposed, and (4) the harm caused by defendant's criminal conduct.  See Bajakajian, 524 U.S. at 337-39; see also Varrone, 554 F.3d at 331 (applying Bajakajian factors); United States v. Collado, 348 F.3d 323, 328 (2d Cir. 2003) (per curiam) (same); United States v. Sabhnani, 566 F.Supp.2d 148, 155 (E.D.N.Y. 2008) (same); United States v. Rudaj, 2006 WL 1876664, at *7 (same).

Because the forfeiture amount consists entirely of proceeds Peters obtained as a result of his criminal conduct, there is some question as to whether forfeiture is even punitive in this context, such that the proportionality analysis applies at all.  See, e.g., Rudaj, 2006 WL 1876664, at *8 (collecting cases and noting that "[s]everal courts of appeal concluded since Bajakajian that the forfeiture of proceeds, as opposed to legally acquired property later involved in a criminal offense, does not implicate Eighth Amendment concerns of disproportionality.")  Even assuming that it does, this Court finds that application of the Bajakajian factors results in a finding that the forfeiture here is not grossly disproportionate to the gravity of Peters's criminal conduct.

As discussed above and proven at trial, Peters was fully engaged in the criminal conspiracy for which he was convicted, the essence of which was to systematically defraud Chase out of millions of dollars over many months.  Peters used improper and false accounting and reporting practices to shield the true nature of World Auto Parts's financial health in order to retain access to the line of credit.  The management of World Auto Parts engaged in these practices at Peters's direction, which perpetuated the conspiracy and the fraud against Chase.  Given his involvement and the use of alter-ego corporate entities to accomplish this scheme, Peters falls squarely within the class of individuals for whom the statutes of his convictions were designed.

24

The penalties for Peters's conduct also demonstrate the seriousness of his offenses. Although not yet finally calculated, this Court estimates that Peters may face an Advisory Guidelines imprisonment range of 135-168 months and a maximum fine of $1,000,000.[17]   His statutory exposure is even worse: a maximum of five years imprisonment and a $225,000 fine for Count 1; and a maximum *for each* of Counts 5-9 of 30 years imprisonment and a $1,000,000 fine.  See 18 U.S.C. §§ 371 and 3571(b)(3) (Count 1), 1014 (Count 5), 1344 (Count 6), 1343 (Counts 7, 8), 1341 (Count 9).  Finally, although this Court recognizes that Chase is a large financial institution, it nonetheless suffered direct harm as a result of Peters's criminal conduct.

Taking these factors into account, this Court finds that forfeiture of $23,154,259 is not grossly disproportional to the gravity of Peters's offenses, and therefore does not violate the Eighth Amendment.

## IV. CONCLUSION

For the reasons stated above, this Court finds that Frank Peters shall forfeit $23,154,259 pursuant to 18 U.S.C. § 982(a)(2) as a result of his crimes of conviction.  The government's request for entry of a preliminary order of forfeiture for a personal money judgment against Peters, with provisions for the forfeiture of the identified substitute assets,[18] if necessary, is therefore granted, and the government is directed to submit a

---

[17] This range is this Court's best estimate at this time, and is in no way binding on the Probation Department, the parties, or even this Court, in determining Peters's final Advisory Guidelines range.

[18] The government has identified the following substitute assets: (1) 515 Mesquite Hills, Lot 25, Palm Desert, CA; (2) 142 Maroon Drive, Lot 5, Aspen, CO; (3) 517 Mesquite Hills, Lot 26, Palm Desert, CA; (4) 73650 Pinyon Street, Palm Desert, CA; (5) one 2000 BMW X5, VIN #WBAFB3354YLH04077; and (6) one 1999 BMW 540I, VIN #WBADN634XXGM63556.

proposed preliminary order of forfeiture consistent with this decision within 10 days of the filing date of this Decision and Order.

## V. ORDERS

IT HEREBY IS ORDERED, that the government's Request for Entry of a Preliminary Order of Forfeiture (Docket No. 285) is GRANTED.

FURTHER, that the government shall submit a proposed preliminary order of forfeiture consistent with this decision within 10 days of the filing date of this Decision and Order.

FURTHER, that Defendant Peters and counsel shall appear before this Court for sentencing on August 14, 2009, at 9:00 a.m.

SO ORDERED.


Dated:   March 19, 2009
          Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge