UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

**DECISION AND ORDER**
03-CR-211S

FRANK E. PETERS,

    Defendant.

## I. INTRODUCTION

On July 30, 2007, a jury convicted Defendant Frank E. Peters of one count of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 371 and 2; one count of making a false statement to a bank in violation of 18 U.S.C. §§ 1014 and 2; one count of bank fraud in violation of 18 U.S.C. §§ 1344 and 2; two counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2; and one count of mail fraud in violation of 18 U.S.C. §§ 1341 and 2. (Docket Nos. 274, 338.) Sentencing is scheduled for January 27, 2011.

Presently before this Court are objections to the Presentence Investigation Report ("PSR").[1] Because counsel are familiar with the facts and prior proceedings in this case, they will be discussed in detail only where necessary.[2] For the following reasons, the government's objections are denied and Peters's objections are granted in part and denied in part.

---

[1] The submissions relevant to the objections are docket numbers 427, 431, 432, 433, 470, 471, 472, 473, 541, and 542.

[2] For a more complete discussion of the facts and prior proceedings of this case, see United States v. Peters, No. 03-CR-211S, 2010 WL 5392645 (W.D.N.Y. Dec. 21, 2010) (new trial) and 257 F.R.D. 377 (W.D.N.Y. 2009) (forfeiture).

1

## II. The PSR

The PSR, last revised on January 26, 2010, is a 51-page document that thoroughly recounts, among other things, Peters's charges and convictions (PSR, ¶¶ 1-30), his offense conduct (PSR, ¶¶ 35-60), his arrest record (PSR, ¶¶ 97-108), his personal and family information (PSR, ¶¶ 121-136), his employment history (PSR, ¶¶ 137-163), and his current financial condition (PSR, ¶¶ 164-177). It also, of course, contains Peters's advisory guidelines calculation, based on the 2000 edition of the United States Sentencing Commission Guidelines Manual, which was the manual in effect at the time Peters committed the offenses of conviction. (PSR, ¶¶ 79-96.)

Peters's advisory guidelines calculation begins with a base offense level of 6, which is the base offense level for fraud-related offenses[3] prescribed by § 2F1.1(a).[4] (PSR, ¶ 81.) Three specific offense characteristic enhancements are then applied. First, there is a 15-level increase pursuant to § 2F1.1(b)(1)(P), because the loss incurred by Chase Manhattan Bank ("Chase") exceeded $10 million but was less than $20 million. (PSR, ¶ 82.) Second, a two-level increase is applied pursuant to § 2F1.1(b)(2), because Peters's offenses involved more than minimal planning. (PSR, ¶ 83.) Third, a two-level increase is applied pursuant to § 2F1.1(b)(6)(C), because the offenses involved sophisticated means. (PSR, ¶ 84.)

Next, two adjustments for Peters's role in the offenses are applied. First, there is an increase of four levels pursuant to § 3B1.1(a), because Peters was the organizer or leader of criminal activity that involved five or more participants or was otherwise extensive.

---

[3] Because Peters's counts of conviction involve substantially the same harm to the same victim, they are grouped to determine the proper advisory guidelines calculations. See § 3D1.2.

[4] Unless otherwise noted, all advisory guidelines citations are to the 2000 edition of the Guidelines Manual.

2

(PSR, ¶ 86.) Second, a two-level increase is applied pursuant to § 3B1.3, because Peters abused a position of trust to facilitate his commission or concealment of the offenses. (PSR, ¶ 87.)

Finally, a two-level increase is applied pursuant to § 3C1.1, based on the probation officer's determination that Peters willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of his offenses of conviction. (PSR, ¶ 88.)

Tallying the base offense level and the enhancements, Peters's total offense level is 33. (PSR, ¶ 93). Peters has zero criminal history points, which renders him a criminal history category I. (PSR, ¶ 96.) Based on these calculations, Peters's advisory guidelines sentencing range is 135 to 168 months imprisonment. (PSR, ¶ 110.) In addition, the advisory guidelines fine range is $17,500 to $1 million, pursuant to § 5E1.2(c)(3), and total restitution in the amount of $11,988,501.36 must be paid to Chase and the Small Business Administration, which both suffered losses. (PSR, ¶¶ 118, 119.)

### III. DISCUSSION

**A.     The Government's Objections**

The court must apply the Guidelines Manual in effect on the date that the defendant is sentenced, unless the court determines that the current manual is more onerous and its application would violate the *ex post facto* clause, in which case it must apply the Guidelines Manual in effect on the date that the offense of conviction was committed. See §§ 1B1.11(a) and (b)(1); United States v. Kilkenny, 493 F.3d 122, 126-27 (2d Cir. 2007).

As noted above, the probation officer prepared Peters's PSR using the 2000 edition of the Guidelines Manual, which was the manual in effect at the time Peters committed his offenses. The government objects, arguing that the current manual should be applied. In

the government's view, the *ex post facto* concerns contemplated by § 1B1.11(b)(1) no longer exist because the guidelines are now advisory.

After the government filed its objections, the United States Court of Appeals for the Second Circuit decided United States v. Ortiz, in which it recognized that *ex post facto* concerns persist under the advisory guidelines sentencing regime. 621 F.3d 82, 87 (2d Cir. 2010). Adopting the standard articulated by the United States District Court for the District of Columbia,[5] the Second Circuit held that the Guidelines Manual in effect at the time of sentencing cannot be used if there is a "substantial risk" that the defendant's sentence will be more severe, thus raising *ex post facto* concerns. Id.; see also United States v. Faison, No. 09-1519-cr, 2010 WL 3548847, at *5 (2d Cir. Sept. 14, 2010) ("When using the version of the Guidelines in effect on the date of sentencing raises *ex post facto* concerns, Courts must use the Guidelines in effect on the date that the offense was committed.").

Here, due to amendments to the Guidelines Manual since 2000, Peters undoubtedly faces a substantial risk of a more severe sentence, because the advisory guideline range has increased. Cf. 18 U.S.C. § 3553(a)(4)(A) (requiring consideration of the guidelines range in determining the sentence to be imposed). Use of the 2000 edition of the Guidelines Manual is therefore required, which the government recently conceded at a status conference before this Court. Accordingly, the government's objections are denied.

---

[5]See United States v. Turner, 548 F.3d 1094 (D.C. Cir. 2008).

B.   **Peters's Objections**

1.   **Advisory Guidelines Calculation Objections**

a.   **Loss and Restitution Computations**

In paragraph 82 of the PSR, the probation officer applied a 15-level increase pursuant to § 2F1.1(b)(1)(P), because he determined that the loss to Chase exceeded $10 million but was less than $20 million. This assessment is the result of the probation officer's investigation, which determined that Chase suffered a loss of $10,999,980 (principal of the loan), and that the Small Business Administration suffered a loss of $750,661.56. (PSR, ¶¶ 60-62, 65.)

According to the probation officer, the Chase loss figure does not include $951,439.20 in loss relating to the $1 million Small Business Administration loan, but this omission does not impact the loss enhancement because it does not push the loss over $20 million. (PSR, ¶¶ 60, 62.) In any event, Chase recovered $713,579.40 from the Small Business Administration, which guaranteed the $1 million loan, thereby reducing Chase's loss on that loan to $237,859.80. (PSR, ¶ 64.) The government therefore argues that the loss reflected in the PSR is actually understated (it should be $11,237,839.80).

Based on these loss figures, the probation officer determined that Peters owes $11,237,839.80 in restitution to Chase, and $750,661.56 in restitution to the Small Business Administration. (PSR, ¶ 65.)

Peters objects to these calculations. First, he speculates that the loss figure "does not seem to" account for funds that Chase recovered through the sale of assets owned by World Auto Parts and Bighorn Core (which Peters estimates to be approximately $476,000) and "may also fail to" account for funds that Chase "swept" daily out of the

5

entities accounts to pay down the loan.  He also suggests that funds Chase recovered from Ernst & Young LLP to settle a related civil suit may not have been deducted.  Citing § 2F1.1, Application Note 8(b), Peters argues that recovery from any or all of these avenues must be deducted from Chase's loss figure.

The government argues that the net principal of $10,999,980 is the proper loss amount because it already accounts for the $476,000 sale of assets and the funds that Chase swept daily.  It also argues that the terms of the confidential settlement between Chase and Ernst & Young require Chase to reimburse Ernst & Young from its recovery in this action, thereby eliminating any risk of double recovery by Chase.

Under § 2F1.1 (b)(1), loss need not be determined with precision.  See § 2F1.1(b)(1), Application Note 9.  "The court need only make a reasonable estimate of the loss, given the available information," which may include the nature and duration of the fraud.  Id.  In this Court's view, it is possible to reasonably estimate the amount of loss in this case, which the probation officer has done.[6]

The investigation, in fact, underestimates the amount of loss given that it does not include loss related to the Small Business Association loan.  The loss figure accounts for Chase's daily sweeps of World Auto Parts's account and the sale of its assets, as provided by legal counsel for Chase.  (PSR, ¶ 62.)  It has been represented that all appropriate deductions have been made to the loss figure, and Peters does not present any evidence to the contrary.  Moreover, the government represents that the terms of the confidential settlement between Chase and Ernst & Young eliminates any danger of double recovery. (PSR, ¶ 63.)  Accordingly, these objections are denied.

---

[6]Because this Court finds that the loss can reasonably be estimated, it need not address Peters's alternative argument that the loss should be calculated as that which he subjectively intended — none.

6

Peters next argues that Chase's loss must be capped at $1,275,000, minus whatever funds Chase recovered through the avenues discussed above. This is the loss figure attributed to Samer during his plea proceedings. Peters argues that he and Samer stand convicted of participating in the same conspiracy and all facts concerning the loss to Chase were known at the time of Samer's sentencing on October 15, 2007. He further contends that his involvement in the conspiracy was no greater than Samer's, and therefore nothing could justify the disparity in loss figures. The government counters that Peters should not gain the benefit of Samer's plea.

This Court finds no cause to cap Chase's loss at $1,275,000. Samer pled guilty to the charges against him in February 2005, with the government's assurance that it would advocate only the loss amount as determined at that time — $1,275,000 — and he was sentenced according to that agreement. After preparation for and completion of trial, the evidence established that the loss far exceeded $1,275,000, and was attributable entirely to fraud, not bad business. Moreover, the trial testimony established that Samer did not have as large a role in the conspiracy as Peters. Accordingly, this Court finds no merit to Peters's argument that he too should gain the benefit of the bargain Samer struck with the government. This objection is therefore denied. This Court finds that the loss and restitution amounts contained in the PSR are proper.

### b. Obstruction Enhancement

In paragraph 88 of the PSR, the probation officer applies a two-level upward adjustment pursuant to § 3C1.1 for obstruction of justice. (PSR, ¶ 88.) This assessment rests on the probation officer's determination that Defendant obstructed justice by (1) relying on a fraudulent letter to ATCO and testifying falsely that he had spoken to Sam

Lugo concerning an $850,000 transaction between ATCO and World Auto Parts, and (2) testifying falsely concerning $300,000 that was transferred from World Auto Parts to his personal accounts. (PSR, ¶¶ 66-74, 88.)

As to the first determination, Peters testified at trial that he faxed a letter to Sam Lugo, Chief Financial Officer of ATCO, which memorialized their previous conversation concerning an $850,000 purchase order. (PSR, ¶ 68.) The letter, which was in Peters's possession, was offered as an exhibit at trial, but never offered to the examiners as support for the existence of the purchase order. (PSR, ¶ 68.) The government interviewed Lugo concerning the letter. (PSR, ¶ 69.) Both during the interview and again at trial, Lugo denied having ever received the letter, having ever had the conversation memorialized therein, and having ever reached agreement on an $850,000 purchase order. (PSR, ¶ 69.) Based on this testimony, the probation officer concludes that Peters fabricated the ATCO letter and then falsely testified to its validity. (PSR, ¶ 69.)

As to the second determination, the trial evidence revealed that the Small Business Administration guaranteed a $1 million loan through Chase to World Auto Parts and Big Horn Core to pay existing invoices and operating costs. (PSR, ¶¶ 70, 71.) Several weeks after receiving this funding, Samer wired $300,000 to personal accounts held by Peters and his wife, which Peters used to pay off the balance of a personal loan they had through Norwest Bank. (PSR, ¶¶ 72, 73.) Hariaczyi testified at trial that he contacted Peters to return this money after discovering that it was not being used for its intended purpose. (PSR, ¶ 74.) Peters thereafter wrote a $300,000 check back to World Auto Parts. (PSR, ¶ 74.)

When questioned about this transaction at trial, however, Peters testified that he did not pay the $300,000 back, but rather, made a $300,000 loan to World Auto Parts. (PSR,

8

¶ 75.) He also stated that the $300,000 wired to his personal accounts was repayment of earlier loans they made to World Auto Parts. (PSR, ¶ 76.) But despite documenting other loans made to World Auto Parts, Peters and his wife had no documentation indicating repayment of a loan to them or that they made another $300,000 loan. (PSR, ¶¶ 75, 76.) The probation officer concludes that Peters's testimony was false.

Peters objects to an enhancement for obstruction of justice. He argues that forensic testing performed on the ATCO letter determined that the paper it was printed on and the ink used for his signature were both available on January 21, 2000, the date indicated on the letter. He further denies testifying falsely about the ATCO letter and the $300,000 wired to his personal accounts.

The government adheres to its trial position that the ATCO letter is a fabrication and that Peters testified falsely about it. It also maintains that Peters testified falsely about the $300,000 wired to his accounts, as evidenced by Hariaczyi's contradictory testimony and the lack of documentation of a $300,000 loan from Peters to World Auto Parts.

In this Court's view, the government has established by a preponderance of the evidence that the obstruction of justice adjustment is warranted. Although much focus has fallen on the legitimacy of the ATCO letter itself, the forensic findings are, at best, inconclusive. All that can be said is that the paper and ink were available in January 2000, which neither proves nor disproves that the letter was written on January 21, 2000. None of the testing concerns the veracity of the letter.

What is clear, however, is that Peters's trial testimony concerning the material issue of the ATCO transaction was flatly contradicted by Sam Lugo, who unambiguously testified that he never received the ATCO letter, never had the conversation referenced therein, and never would have agreed to the terms of the transaction as they were stated. Moreover,

9

it is illogical and improbable that the ATCO letter would be withheld from field examiners questioning the legitimacy of the transaction, if the letter indeed existed in April and May 2000. Certainly, if there was such an agreement with ATCO, Peters would have sought confirmation from Lugo and immediately provided it to the field examiners. In this Court's view, Peters's false trial testimony was designed to conceal his fraudulent conduct in the hopes of acquittal — it was not the result of confusion, mistake, or faulty memory. Thus, this Court finds that Peters committed perjury to willfully impede or obstruct justice. The obstruction adjustment is therefore proper and Peters's objection is denied.[7] See United States v. Dunnigan, 507 U.S. 87, 113 S.Ct. 1111, 1119, 122 L.Ed.2d 445 (1993).

### c. "Organizer or Leader" Adjustment

Pursuant to § 3B1.1(a), a four-level upward adjustment may be applied if a defendant was an "organizer or leader" of criminal activity that involved five or more participants or was otherwise extensive. In determining whether a defendant is a leader or organizer, courts consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." § 3B1.1(a), Application Note 4. The probation officer applies this adjustment in paragraph 86 of the PSR.

Peters denies being an organizer or leader and requests a hearing on the issue.

---

[7]Peters's testimony concerning the $300,000 transfer to his personal accounts is also highly suspect, particularly given Hariaczyi's contradictory testimony. But the inconsistent manner in which Peters's loans to World Auto Parts and Big Horn Core and repayment of those loans was documented leaves the possibility that Peters's testimony was the result of confusion, mistake, or faulty memory. Moreover, Peters was acquitted on the counts related to the $300,000 transfer. In any event, this Court has already found that Peters testified falsely concerning the ATCO transaction. Accordingly, the obstruction adjustment is well supported even without consideration of this testimony.

10

In this Court's view, however, no hearing is necessary. This Court presided over the ten-week trial and heard all of the evidence presented. Based on that evidence, this Court has little difficulty concluding that this enhancement applies. The jury determined that Peters engaged in extensive criminal activity and the proof demonstrated that it involved five or more participants who acted under Peters's leadership or control. (PSR, ¶ 86.) This Court therefore finds that this upward adjustment applies. Peters's objection is denied.

### d. "Abuse of a Position of Trust" Adjustment

Pursuant to § 3B1.3, a two-level upward adjustment may be applied if a defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." A position of public or private trust is "characterized by professional or managerial discretion." § 3B1.3, Application Note 1. This adjustment typically applies in cases such as "an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of examination." The probation officer applies this adjustment in paragraph 87 of the PSR.

This adjustment is applied on the basis that Peters held a position of trust by virtue of his positions with World Auto Parts and Big Horn Core, which he abused in his dealings with Chase and by diverting World Auto Parts payments and customers to Innovative Transmission and Engine Company ("ITEC"), LLC, a company he created. But in this Court's view, Peters did not owe any special duty to Chase, and any fiduciary duty he owed to World Auto Parts is not the type of "position of public or private trust" contemplated by § 3B1.3 This Court therefore finds that this adjustment does not apply. Peters's objection is sustained and his total offense level will be reduced by two levels.

11

### e. "More than Minimal Planning" and "Sophisticated Means" Adjustments

Pursuant to § 2F1.1(b)(2), a two-level upward adjustment may be applied if the offense involved more than minimal planning. "More than minimal planning" is defined in the Application Notes to § 1B1.1. See § 2F1.1, Application Note 2. It means "more planning than is typical for commission of the offense in a simple form" or "if significant affirmative steps were taken to conceal the offense." § 1B1.1, Application Note 1(f). Creating false invoices and purchase orders also constitutes minimal planning. Id. The probation officer applies this adjustment in paragraph 83 of the PSR.

Pursuant to § 2F1.1(b)(6)(C), a two-level upward adjustment may be applied if the offense involved sophisticated means. Sophisticated means, as used in this guideline, "means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." § 2F1.1, Application Note 18. For example, "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore bank accounts" would indicated sophisticated means. Id. The probation officer applies this adjustment in paragraph 84 of the PSR.

These adjustments are applied because the scheme to defraud Chase involved (1) repeatedly providing Chase with false information, (2) repeatedly employing manipulative tactics (e.g., pre-billing, keeping-the-month-open, rebilling) to maintain access to the line of credit, and (3) using false invoices and documentation to conceal the scheme. (PSR, ¶¶ 83, 84.)

Peters objects to the application of these two adjustments, arguing that the base offense level provides sufficient punishment for his conduct. He argues that others in World Auto Parts and Big Horn Core engaged in the specific conduct described in

paragraphs 83 and 84 of the PSR, not him. Citing § 1B1.3(a)(1)(B), the government argues that Peters is accountable for all reasonably foreseeable acts and omissions taken in furtherance of the jointly undertaken scheme to defraud Chase, particularly given his conviction on the conspiracy count.

In this Court's view, these adjustments are properly applied. The scheme to defraud Chase, for which Peters is criminally responsible, involved more than minimal planning and sophisticated means. The base offense level does not account for these aggravating factors and Peters cannot exonerate himself by claiming that others involved in the scheme engaged in this activity. This Court therefore finds that the adjustments are proper. Peters's objections are denied.

### f. Final Advisory Guidelines Calculation

Based on the above, this Court finds that the total offense level set forth in the PSR should be reduced by two levels, because the adjustment under § 3B1.3 for abuse of a position of trust does not apply. Peters's total offense level is therefore 31 and his criminal history category is I, resulting in an advisory guidelines range of 108-135 months.

### 2. Other Objections

Along with challenging certain of the advisory guidelines calculations, Peters also argues that the facts surrounding his 1987 acquittal on a fraud charge in Great Britain and certain portions of the "offense conduct" section of the PSR are not properly included. (PSR, ¶¶ 97-108; ¶¶ 33, 39, 41, 43-45, 47, 51-56.) Further, Peters objects to the suggestion in the PSR that he has misrepresented his past employment (PSR, ¶ 133) and to what he contends is an incomplete discussion of ITEC (PSR, ¶ 139).

This Court has reviewed the paragraphs to which Peters objects and finds that they

are properly included in the PSR. First, the discussion of Peters's 1987 acquittal on the fraud charge in Great Britain is not unfairly misleading, inflammatory or prejudicial, as Peters contends. It is simply relevant background that this Court must consider as part of the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1).

Second, Peters's objections to portions of the "offense conduct" section of the PSR essentially amount to a recitation of what he believes the trial evidence showed. The government, no doubt, has yet another view of the evidence. This Court, of course, presided over the trial and has its own recollection of the evidence and testimony. Nothing in the offense conduct portion of the PSR is materially incorrect and this Court will rely on its own recollection of the trial evidence and testimony. No adjustment to the PSR is necessary.

Finally, this Court finds no cause to adjust the PSR in response to Peters's claim that paragraph 133 implies that he misled the probation officer about his employment as an attorney or that there is an incomplete discussion of ITEC in paragraph 139. In this Court's view, neither paragraph is objectionable.

### 3. Non-Guidelines Sentence

Finally, Peters objects to paragraph 178 of the PSR, wherein the probation officer states that there are no known aggravating or mitigating factors that would warrant a sentence outside of the advisory guidelines range. Peters's objection is noted and his request for a non-guidelines sentence will be resolved at sentencing on January 27, 2011.

## IV. CONCLUSION

None of Peters's objections require a hearing to resolve. This Court heard all of the trial evidence and testimony; no further testimony is needed. For the reasons stated

above, the government's objections are denied and Peters's objections are granted in part and denied in part. Peters's total offense level is 31 and his criminal history category is I, resulting in an advisory guidelines range of 108-135 months.

## V.  ORDERS

IT HEREBY IS ORDERED, that the Government's Objections to the Presentence Investigation Report (Docket No. 427) are DENIED as moot.

FURTHER, that Defendant's Objections to the Presentence Investigation Report (Docket No. 431) are GRANTED in part and DENIED in part.

SO ORDERED.


Dated:   January 26, 2011
        Buffalo, New York

/s/William M. Skretny<br>
WILLIAM M. SKRETNY<br>
Chief Judge<br>
United States District Court